**JONES KNITTING CORPORATION, the Russell Manufacturing Company, Inc., Union Underwear Company, Washington Mills Company, West Knitting Corporation, Oneita Knitting Mills and P. H. Hanes Knitting Company, Plaintiffs,**

v.

**John E. MORGAN and John E. Morgan Patents, Inc., Defendants.**

**Civ. A. No. 25348.**

United States District Court
E. D. Pennsylvania.
April 10, 1964.

---

43. Cf. Schaefer v. Thompson, 237 N.Y. 55, 142 N.E. 351 (1923).

See also D.C., 184 F.Supp. 840; D. C., 244 F.Supp. 235.

Henry N. Paul, Jr., Robert B. Frailey and Harold S. O'Brian, Jr., of Paul & Paul, Philadelphia, Pa., for defendants.

CALEB M. WRIGHT, District Judge.

■ This is a Declaratory Judgment action arising out of a single patent No. 2,839,909 issued to John E. Morgan on June 24, 1958 on an application filed May 16, 1957, for a "Knitted Fabric". The court has jurisdiction since the defendants reside in the Eastern District of Pennsylvania, and the action arises under the Patent Laws of the United States, Title 35 U.S.C., 28 U.S.C. § 1338.

On August 22, 1958, Morgan assigned his patent, together with all claims, demands and causes of action for past infringement to John E. Morgan Patents, Inc., a Pennsylvania corporation, having its sole place of business in Tamaqua, Pennsylvania. The business of the defendant corporation consists of offering and granting licenses and collecting royalties under the patent in suit.

Morgan is president of the defendant corporation and J. E. Morgan Knitting Mills, Inc. He and his wife own virtually all of the stock in both corporations.[1]

The plaintiffs and the following named companies (all of which are hereinafter referred to as the "Plaintiff Group") are manufacturers of knitted goods:

Atlas Underwear Corporation

Bennett Textile Company

Pannill Knitting Company, Inc.

Roanoke Mills, Inc.

Standard Knitting Mills

The announcement of the issuance of Patent No. 2,839,909 (Morgan Patent) caused concern among manufacturers of circular knit winter underwear. Conferences were held in New York City by representatives of the companies including the plaintiff group. The conferences resulted in this suit being brought by the named plaintiffs with all of the plain-

Roberts B. Larson and William R. Hinds, of Larson & Taylor, Washington, D. C., and Ernest R. von Starck, of Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiffs.

---

1. Pretrial Order, admitted Facts Nos. 1 and 2.

tiff group helping to defray the expenses of the litigation.[2]

The plaintiff group by the Declaratory Judgment action seeks to have the patent declared null and void. The defendants assert a counterclaim for infringement of the Morgan patent which is denied by the plaintiffs.

There are 18 claims in the patent but the defendants have charged plaintiffs with infringing only claims 1, 2, 4–13.

In short, the issues raised by the pleadings are (1) Validity of the patent, and (2) Infringement. Infringement is not discussed because the patent is found to be invalid due to indefiniteness of the claims, existence of prior art, and lack of invention.

## DISCUSSION

### I. Indefiniteness of the Claims

The claims of the Morgan patent may be broken down as follows:

Claims 1–4 directed to a fabric;

Claims 5–13 directed to a method of knitting a fabric;

Claims 14–18 directed to a method of processing a knitted fabric.

The patent application was filed on May 16, 1957 and the patent was issued on June 24, 1958.[3] The title of the Morgan patent is "Knitted Fabric". The specifications recite that the patent relates to the knitting of "air entrapping fabrics which are suited for use in the production of garments such as underwear and which, because of the cellular configuration or shape of the fabric is particularly adapted to provide warmth." It is also stated that "the invention is particularly directed to the production of light weight knitted fabrics * * * which have a multitude of air-entrapping cells formed therein, these cells being retained to continue the insulating excellence of the fabric dispite [sic] prolonged wear." [4] At column 6, line 44 it is stated "These fabrics are, therefore, par-

ticularly adapted for underwear intended for arctic use. However, the utility of the knitted fabrics of the invention is not limited in this regard and these fabrics can also serve as the basis for sweaters, dresses and other articles of knitted outerwear."

The patent contains six drawings or figures. Fig. 1 shows a needle setup on a dial and cylinder machine for 2 x 2 rib knitting. Fig. 2 shows the knitting sequence for a particularly preferred "embodiment". Fig. 3 is incorrect since it does not show tuck stitches as described or claimed.[5] Fig. 4 is an enlarged photograph of an actual fabric. Fig. 5 is the process used in finishing the fabric. Fig. 6 is an enlarged photograph of the fabric after being finished by the process shown in Fig. 5.

The term "heat insulating knitted fabric" appears in the preamble in each of the claims. The term "heat insulating fabric" is used once in the specifications. The term "heat insulating cellular knitted fabrics" is used once in the example. Nowhere in the patent is the term "heat insulating" specifically defined, although Mr. Lawson, Morgan's expert, did testify that Morgan used the term in a special sense. Lawson testified that from the reading of the Morgan patent, Morgan used the term "heat insulating fabric" as definitive of a fabric having air-entrapping cells to provide a construction of high warmth retention character, the tuck strands underlying the ribs of the fabric and functioning to brace and maintain the height of the ribs when the fabric is stretched or subjected to prolonged wear.[6]

The law requires that patent claims be described with such precision as to leave no doubt of the scope of the invention claimed. Whether or not the patent in suit is invalid because the claims are too indefinite depends primarily upon the meaning of the term

2. Pretrial Order, admitted Facts Nos. 5, 6, 7, 8.

3. PX 31.

4. Column 1, line 26.

5. Pretrial Order, admitted Fact No. 11.

6. N.T. pp. 147–149.

"heat insulating" as used in the claims of the patent. A claim is indefinite when the line between what is covered by the claims and what is not covered is unclear. Helene Curtis Industries, Inc. v. Sales Affiliates, Inc., 121 F.Supp. 490 (S.D.N.Y.1954), aff'd 233 F.2d 148 (2 Cir. 1956), cert. den. 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80. Specifications are indefinite when they do not give adequate instructions to carry out the invention. See, Ellis "Patent Claims" § 313 (1949).

In General Electric Co. v. Wabash Appliance Corp., 304 U.S. 364, 369, 58 S.Ct. 899, 901, 82 L.Ed. 1402 (1938) the Court stated:

> "Patents, whether basic or for improvements, must comply accurately and precisely with the statutory requirement as to claims of invention or discovery. * * * The inventor must 'inform the public during the life of the patent of the limits of the monopoly asserted, so that it may be known which features may be safely used or manufactured without a license and which may not.' The claims 'measure the invention.' * * * In a limited field the variant must be clearly defined."

■ As stated by Mr. Justice Jackson in United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236, 63 S.Ct. 165, 170, 87 L.Ed. 232 (1942):

> "The statutory requirement of particularity and distinctness in claims is met only when they clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise. A zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims would discourage invention only a little less than unequivocal foreclosure of the field."

■ There is little doubt that one skilled in the art of knitting could follow the specifications of the patent and knit the Morgan fabric as disclosed in Fig. 4. But the fabric described in Fig. 4 is not the invention claimed; the invention is any heat insulating knitted fabric having air entrapping cells on both sides formed by a plurality of tuck stitches in the valleys between the ribs. Nor does a fabric knit in conformity with the knitting sequence set forth in Fig. 2 necessarily knit the Morgan fabric as shown in Fig. 4.[7] Therefore, one must ask when is a cellular fabric knit as described in the patent a fabric within the claims of the invention. The answer to this seems obvious—when it is heat insulating. Both Mr. Lawson, Morgan's expert, and Dr. Shinn, the plaintiffs' expert, testified that practically all fabrics were heat insulating to some degree.[8] If the term "heat insulating" or "heat insulating knitted fabric" is to mean something other than in its ordinary sense, then the special meaning must be clearly indicated in the patent itself. A patentee may define the terms used in the patent. Universal Oil Products Co. v. Globe Oil & Refining Co., 40 F.Supp. 575, aff'd 137 F.2d 3, (7 Cir. 1943), aff'd 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399. But where the term is not defined in the patent it will be taken in its ordinary sense. Chemical Construction Corporation v. Jones & Laughlin Steel Corporation, 311 F.2d 367 (3 Cir. 1962). It is also true that claims must be read upon the specifications, but if a term, as used in the claims, does not have any definitely fixed or determinable meaning in the ordinary sense, the term must be so anchored in the specifications as to leave no doubt as to the special meaning of the term. The court has looked in vain to find in the specifications or in the claims any hint that the term "heat insulating" was ever considered other than in the ordinary sense.

■ In the art of fabric manufacturing there has been no standard established to define what is a heat insulating fabric and what is not. Mr. Lawson tes-

---

7. See Lawson's testimony, N.T. 200.

8. Lawson, N.T. 493; Shinn, N.T. 767.

tified that the American Society for Testing Materials does not have a permanent recognized test for this.[9] In fact, the Navy, and other large customers of the knitting industry set their own standards as to what they deem to be heat insulating fabric.[10] The term "heat insulating" as used in connection with knitted fabrics with air entrapping cells is a relative or comparative term and since there is no clear standard with which it can be compared or related so as to determine the scope of the claims, the claims must be declared invalid because of indefiniteness. See B. B. Chemical Co. v. Cataract Chemical Co. Inc., 122 F.2d 526 (2 Cir. 1941).

## II. *Prior Art*

It is contended that the Morgan patent is invalid because claims have been anticipated in the prior art. In this area the opposing sides have in particular locked horns over a fabric knit by Carroll Anderson in 1933.

■ Anderson had just begun to work for Munsingwear in 1933 when he was called upon to produce a "waffle knit" fabric. In response to this request, Anderson knit some 2 x 2 rib fabrics with alternating groups of three tuck strands on each side of the fabric.[11] The knitting sequence which Anderson employed produced a fabric with cells on either side. The fabric retains these cells even when it is stretched. The cells entrap air just as any cells on any fabric entrap air. The air-entrapping nature of Morgan's cells is a matter of degree and not of kind when the Morgan fabric is compared with Anderson's product.

In fact, when the Morgan claims are shorn of the insubstantial magic of "heat insulating" the similarity of the Anderson and Morgan fabrics is striking. Both fabrics are rib knitted fabrics. Both are made by machines tucking on both the dial and the cylinder needles. Both present a cellular configuration which does not disappear when the fabric is stretched.

The Court finds that the Morgan claims were anticipated by Anderson in 1933.

■ To be prior art, however, something more is needed than a fabric which is similar to that envisioned in the Morgan claims. The anticipating fabric must have been known to the public. It is not enough that Anderson knit the fabric. He must have made his design known to the public.

"The mere fact that the earlier invention was not the subject of patent is not material, nor is it material that the inventor may have been ignorant of the anticipatory invention. The invention, however, must have been known to the public, or there must have been an opportunity to acquire such knowledge as would enable one skilled in the art to reproduce it without exercising further invention of his own." Simmons v. Hansen, 117 F.2d 49, 51 (8 Cir. 1941).

There is testimony in the record which would indicate that the Anderson fabric was worn in public by Munsingwear testers and that the fabric was, in fact, sold to the public as leftovers through the company store. The fabric was never incorporated into the regular Munsingwear line. This testimony, however, is too tenuous. For one thing, it is based on knowledge of the company's regular course of action rather than actual observation. For a second, where actual observation does come into play, the Munsingwear employees who testified were admittedly not familiar with the art of knitting. It is all too possible that some other waffle knit, for example, a fabric knit by Anderson with tucks on one side only, could have been mistaken for the particular Anderson fabrics which resemble the Morgan configuration.

9. N.T. 485.

10. N.T. 506.

11. Top 5 fabrics, PX 38A.

However, Anderson, himself, saw garments made from his fabrics hanging on the display racks in the Munsingwear Designs Division. This display is accessible to outside buyers as well as the company merchandising men. This display alone is sufficient to make possible public knowledge of the Anderson fabric and to constitute that fabric prior art. Coffin v. Ogden, 18 Wall. 120, 85 U.S. 120, 21 L.Ed. 821 (1873).

### III. *Lack of Invention*

Mere skill is not invention and the distinction between mechanical skill and invention is whether what was produced was obvious to persons skilled in the art and acquainted with common knowledge in the art at the date the device was created. The question always is whether the inventive act is of sufficient magnitude to justify the extension of a legal monopoly for the matter covered by the claims. Helene Curtis Industries, Inc. v. Sales Affiliates, Inc., 233 F.2d 148, 152 (2 Cir. 1956), cert. den. 352 U.S. 879, 77 S.Ct. 101, 1 L.Ed.2d 80.

The standard of invention is elusive and creates many difficulties when it is sought to be applied to a particular case. Since the problem usually arises, at least for a court, subsequent to the alleged invention there is ever present the possibility that what now appears obvious might have appeared insolvable before the alleged invention was achieved.

If the court is about to declare the Morgan patent invalid because of lack of invention, it affords little comfort to express admiration for Morgan's dogged determination in the face of the stubborn resistance and pessimistic attitude of his knitter Ditzler. But the stubbornness and belief in an idea alone are not invention. It is the means by which the idea is reduced to practice which must contain the elements of inventiveness as distinguished from mechanical skill and know how.

In order to apply the yardstick of invention to the Morgan fabric it is useful to recount briefly the events and circumstances leading up to the introduction of the fabric. The Navy had been working on the development of a fabric embodying the use of air as an insulating factor rather than relying on the bulk or weight of the fabric. This idea had been explored and commented upon by Professor W. Davis in his book entitled "Hosiery Manufacture" published in 1931. Whether others had studied the problem before this is unimportant. The Navy had finally produced a fabric which was heavy and suitable for use as underwear under very cold climatic conditions. This fabric had a cellular configuration on both sides of the fabric and was knit on a Raschel machine. Morgan, like other manufacturers of underwear for the Armed Services, bought the fabric from mills which used the Raschel knitting machines.

Morgan apparently had difficulty in cutting the Raschel fabric. He had circular knitting machines standing idle in his plant while he was forced to buy fabric to meet orders from mills which had Raschel machines. These factors caused him to turn his attention to the possibility of knitting a substitute for the Raschel fabric on his own circular knitting machines. Morgan undertook this project in May of 1956.

Morgan was not a skilled knitter, but he had an idea of what circular knitting machines were like and he knew a bit about their operation.[12] Morgan was familiar with the old polo shirt fabric which had a waffle like appearance on one side produced by the use of tuck stitches. He was also aware of the old snuggie garment with multiple tucks on one side and one tuck on the other. The fabric used in the old snuggie garment had a mesh or loose effect and was used in ladies' undergarments to permit a stretching of the garment, and at the same time, to mold it to the body. With these two old fabrics in mind Morgan talked to his knitter, Ditzler, and pointed out to him that he thought they could

---

12. PX 157, p. 5.

imitate the cell structure of the Navy Raschel fabric by using multiple tuck stitches to form the cells.

Multiple tucking was not new in the art.[13] Ditzler proceeded to make fabrics with various knitting sequences in an effort to duplicate one side of the Raschel fabric. After many trials a fabric was developed with cells on one side with the tuck stitches arranged so as to satisfy Morgan that he had a good imitation of one side of the Raschel fabric. This was finally achieved by knitting a 2 x 2 rib fabric and tucking three times on the dial.[14] At this point Morgan decided to "go ahead and try and tuck the back."

Ditzler was familiar with multiple tucking on one side of the fabric (Dial), but he had never seen or heard of tucking on the other side of the fabric (Cylinder). He told Morgan that it could not be done. If a yarn heavy enough to copy the Raschel fabric were used, the needles of the machine would break or bend or simply be unable to hold the multiple tuck stitches. This is amply substantiated by Morgan's testimony in his deposition as follows:

"Q You said you decided to put a tuck on the back finally?

"A Yes.

"Q Was that because your fabric was loose and you wanted to tighten it up, or what?

"A Well, it's because it had sort of this effect on the front. We had a semblance of a pocket but there was nothing on the back. We had nothing, where this fabric (Raschel) has it both sides.[15]

"Q But you had known in connection with the snuggies garment that you could make ribbed knit with tucks on both sides?

"A Yes.[16]

*   *   *   *   *   *

"A But when we got into heavier yarns and to try to get a weight garment, to get three tucks across the back, it was pretty difficult, and Mr. Ditzler didn't think we could do it.

*   *   *   *   *   *

"Q He wouldn't have had any trouble doing it if he had used a thin yarn?

"A That's right." [17]

Morgan pressed Ditzler to try despite his doubts. Ditzler did try and discovered that he could tuck on both the front and back of a fabric. By September of 1956, five months after the start of Morgan's project, the Morgan fabric had been produced.

In considering whether there is lack of invention because of obviousness, one must not forget that Morgan was attempting to copy the Raschel fabric. The idea of the cellular configuration of the fabric for the purpose of entrapping air was not his idea, it was the Navy's or the idea of people who preceded the Navy in the field and realized the potential of using entrapped air in a fabric as insulation against cold. The Raschel fabric already produced by someone else and the similarity between it, the old waffle knit fabrics and the snuggie garments gave birth to the idea.

█ The use of tucking to achieve the cell effect in the fabric could be accomplished on a circular knitting machine only by multiple tucking. In rib knitting multiple tuck strands always perform the function of bracing the fabric and limiting its width.[18] It was also well known in the art that by utilizing the same knitting and tucking sequence on the cylinder as on the dial the fabric would be identical on both sides. With these facts before them, the problem that remained for Morgan and Ditzler was finding the knitting sequence which would most closely resemble the Raschel fabric. This necessitated knitting various rib fabrics and adjusting the ma-

13.  PX 157, p. 54;  PX 200.

14.  PX 157, p. 59.

15.  PX 157, pp. 60, 61.

16.  PX 157, p. 54.

17.  PX 157, p. 55.

18.  N.T. 1547, 1548.

chines for that purpose. It required the knitter, using all his skill and know how to find by trial and error a fabric closely resembling the Raschel fabric on one side. Ditzler was positive an imitation of the Raschel fabric could not be made on a circular knit machine, not because it was unobvious to him or to Morgan, but because multiple tucking with the size yarn necessary to duplicate the Raschel fabric, and the strain and tension which must be exerted on the yarns would result in mechanical failure of the machine. When the testimony of Morgan and Ditzler is analyzed and the mechanical nature of what they did is understood, it is difficult to see how their work rises to the heights of invention. They did nothing more than bring to bear on a particular mechanical problem a knowledge of certain fundamental principles of knitting well known in the art, skill and know how, and the courage to overcome their own doubts. These were not sufficient to constitute invention.

The court is of the opinion that its position is further buttressed by what had already been done by others at the time Morgan commenced to develop his fabric.

▆▆ Carroll Anderson, for instance, made a fabric the knitting sequence of which was identical with the sequence set forth in Fig. 2 of the patent. This cloth was made in 1933. It also is a heat insulating fabric and has cellular configuration, the structure of which serves the same purpose as set forth in the Morgan claims. Irrespective of whether the Anderson fabric is prior art, it certainly can be cited to indicate a lack of invention by Morgan.

For the same purpose one can cite the Jones Knitting Corporation fabric made by Lloyd Kranz and finally developed in December, 1956.[19] The court finds that Kranz did not see or know of the Morgan fabric until August, 1957. It is interesting to note Kranz developed the Jones fabric with its cellular configuration by using a plurality of tucks on one side of the fabric and that Anderson upon seeing the Jones fabric thought it could be improved upon by adding tucks on the other side.[20] This fabric was first made by Munsingwear at Anderson's request by Mr. Woodhead.[21] The original fabric was made August 29, 1958.[22] Anderson did not see the Morgan fabric until November 25, 1958, some time after it had been knit;[23] nor had he seen the Morgan type fabric at that time.[24]

There are also in evidence two fabrics made by Michael LaCorte, a knitter for Beaunit Mills, Inc. prior to 1953.[25] These two fabrics are a 2 x 2 rib setup having three tucks on one side and one tuck on the other. The cell arrangement, at least on one side, is obvious and the cells are air entrapping; the fabrics are close knit, but the yarn is not as heavy as the yarn used in Morgan's example. Using the LaCorte fabric as a base the Morgan patent fabric could be knit by using two strands instead of one on the side having one tuck or by using multiple tucks on that side. Either operation was old in the art and the former was commonly employed when a knitter ran out of heavy yarn and tucked lighter yarns to produce the same result. LaCorte produced these fabrics while "fooling around" and, although they are not cited as prior art, they are strong evidence of lack of invention on the part of Morgan.

For the purpose of showing lack of invention the plaintiffs cited a fabric allegedly made by Emmitt Murray in 1935 or 1936. The fabric itself was not produced. But the knitting diagram for this fabric is set forth in PX 223 at the page marked as PX 223A. The stitch diagram is for a ribbed fabric having a

19. PX 226, p. 71.

20. N.T. 974.

21. N.T. 954, 955.

22. DX 101; N.T. 941.

23. DX 101.

24. N.T. 949, 977, 978, 1006, 1008, 1009.

25. PX 299.

plurality of tuck stitches on each side, with at least two successive tuck stitches bridging the valleys on each side of the fabric.[26] While this fabric is not in evidence the knitting diagram PX 223A is evidence that Emmitt Murray knitted a fabric with a plurality of tuck stitches on both sides in 1935 or 1936.

As has been heretofore stated the prior art already shows by performing the same knitting operation on both banks of needles the same effect on both sides of the fabric could be obtained. That this was known in the art of tucking is illustrated by the "Double French Rack" fabric.[27] The fabric is a rib knit and the knitting sequence on both sides of the fabric is identical. The knitting sequence includes tucking twice on one bank of needles followed by tucking twice on the other bank of needles. The Anderson fabric shows tucking on both sides of the fabric to get the same effect. The German patent teaches the same principle.[28]

### FINDINGS OF FACT and CONCLUSIONS OF LAW

#### I. *Findings of Fact*

1. The specification of the Morgan patent states that the needle arrangements (which control the width of the ribs and valleys) can be varied, and that no particular needle arrangement or rib width is essential to the invention, although a 2 x 2 rib is preferred. Figure 2 of the patent shows a preferred knitting sequence, but the patent points out that this sequence is not essential to the invention.

[Morgan patent, Col. 2, lines 66–69; Col. 4, lines 6–9].

2. Figure 3 of the drawings of the Morgan patent is incorrect in that it shows no tuck stitches as described or claimed. The specification in describing Figure 3 refers to tuck stitches 22 and 23, but these are not shown in the figure as tuck stitches.

[Pretrial Order, Admitted Fact No. 11].

3. The patent states that the yarn loops which are knitted off as a result of the tuck stitches extend transversely across the knitted product between longitudinally extending troughs or valleys and that the tuck strands overlie the valleys and underlie the ribs of the fabric. These are necessary and inherent features of any tuck strand or strands in a rib knit fabric.

[N.T. 507, 508].

4. There are no recitations in any of the claims regarding the type, size, nature or composition of the yarns employed, except Claims 3 and 14–18 call for a fibrillatible yarn. These claims are not limited, therefore, to any particular fabric that Morgan may have manufactured.

[Pretrial Order, Admitted Fact No. 14].

5. The floors of the so-called "air-entrapping cells" of the Morgan patent are not described in the patent as to tightness of knit or degree of porosity.

6. The single example set forth in the specification of the Morgan patent is not in any manner a limitation of the claims of the patent.

7. Fabric Claims 1–4 of the Morgan patent have as their preambles the words "a heat insulating knitted fabric." The term "heat insulating" is not specifically defined in the patent.

During the prosecution of the Morgan application, the Examiner considered the term only in its ordinary sense when he referred to napping to produce a heat insulating knitted fabric. [PX 31, paper No. 5]. In responding to the Examiner's rejection, Morgan through his attorney used the term "insulating" in its normal sense. [PX 31, paper No. 6]. In the file history of the application and in the patent itself, no special meaning was ever attributed to the term, and its manner of use is consistent only with the commonly accepted meaning. As such the term has no relation to cells generally or specifically or to the bracing function of tuck

---

26. N.T. 1197–1199.

27. PX 200, p. 138.

28. PX 192.

strands in a rib knit fabric. The term is merely one of degree since all fabrics are heat insulating to some extent, and therefore the term has no special status in the art of knitted fabrics.

[Lawson, N.T. 493, 483].

8. The term "heat insulating" in the specification and claims of the Morgan patent is a relative term or a term of degree which is incapable of exact definition. As such, it does not clearly inform one skilled in the art what fabrics are covered by the patent and what fabrics are not covered by the patent, since no standards for comparison are set forth.

[N.T. 483–488, 493, 503–505, 1177].

9. Practical men skilled in the art having before them fabrics knitted according to the knitting sequences of the Morgan patent would have different opinions as to which fabrics are covered by the patent and which are not so covered, and would not draw the line at the same point in delineating between fabrics which are covered and those which are not covered.

[Lawson, N.T. 505].

10. Morgan's expert testified that one following the knitting sequence shown in Fig. 2 of the patent and set forth in the method claims of the patent would not necessarily make a "Morgan fabric."

[N.T. 200].

11. Long before Morgan applied for a patent there had been developed for the Navy a knitted fabric for underwear made on a Raschel flat bed machine and having pockets on both sides alleged to entrap air. Such fabric was sold commercially and gained consumer acceptance. There is no patent on this fabric.

[Pretrial Order, Admitted Fact No. 9].

12. Prior to the time the alleged invention here involved was made, Morgan knew of old fabrics which were referred to as "waffle" fabrics. They were rib knit fabrics incorporating tuck stitches to give waffle-like depressions or pockets in the valleys between the ribs on at least one side of the fabric. Morgan stated that the appearance of these old fabrics was much like the Raschel fabric, and he requested Ditzler to produce such a fabric having the waffle-like depressions or pockets.

[Morgan, N.T. 666–671; Morgan, PX 157, pp. 10, 12, 13, 48, 51, 87, 88; Morgan PX 127, pp. 283–286; Ditzler, PX 155, p. 271; PX 25; PX 212; PX 217].

13. In the making of the alleged invention here involved, Morgan requested Ditzler to produce a fabric having a so-called waffle stitch or depressions, preferably on both sides. Ditzler knew how to get a waffle effect on one side by means of dial tuck stitches or strands.

[Ditzler, PX 155, p. 271].

14. In making the alleged invention, Morgan and Ditzler first made a fabric with a waffled or pocketed effect on one side, and then added tucks on the other side to get the same effect on the other side.

[Morgan, N.T. 674, 675; Morgan, PX 157, p. 60].

15. Since Morgan was admittedly not skilled in the art of knitting or designing knitted fabrics, since Ditzler was not experienced in tucking on the cylinder needles and indeed had never heard of plural tucking on the cylinder needles, and since their efforts to knit the fabric were not full time but interspersed with other work, and was delayed from day to day by Ditzler's positive belief that a circular knitting machine could not be made to tuck a plurality of stitches on the cylinder without breaking or bending the needles or dropping stitches, the time required to complete a fabric is entitled to little if any weight in measuring the inventive effort involved.

[Ditzler, PX 155, pp. 220, 247, 251, 256, 226].

16. Although Morgan and Ditzler encountered some difficulty in knitting the first fabric, these difficulties essentially involved learning how to adjust the machine and adjusting the machine for commercially feasible operation. [Morgan, PX 157, pp. 55, 58, 60, 152; Morgan, PX 127, pp. 290–293; Ditzler, PX 155, pp. 189–192, 226, 239–240, 249, 251, 275;

Ditzler, PX 156, pp. 28–31, 33, 34, 43]. The patent itself is not directed to such problems or their solution. It contains no instructions for the necessary machine adjustment and therefore does not solve the alleged problems which were encountered. The patent merely says that such adjustments are obvious.

[Morgan patent, lines 49–57].

17. The basis for Morgan's and Ditzler's first knitting a rib knit fabric with plural tucks on the dial needles only was the old waffle fabrics which were known to Morgan, since Morgan admitted that these old fabrics were "in appearance much like the thermal shirt cloth."

[PX 217].

18. In February, 1933, Carroll R. Anderson, a knitter of experience, went to Munsingwear, Inc. of Minneapolis as a fabric designer for their outerwear department to make novelty fabrics for an outerwear line such as women's sweaters, which line was new to Munsingwear at that time.

[N.T. 785–787].

19. One of Carroll R. Anderson's first jobs after coming to Munsingwear was to knit some fabrics for the Design Department for use in making fancy sweaters. The chief designer asked him to make something like "a waffle knit." [1] In compliance with this request Anderson made several fabrics, but the ones he thought most appropriate as a waffle fabric were made with a 2 x 2 needle setup on a rib knit circular knitting machine with alternate groups of three tuck stitches and three knit stitches on each side and spaced by a single knit stitch. [PX 38A]. These fabrics were knitted in accordance with the knitting sequence shown in the knitting diagram which is Fig. 2 of the Morgan patent. [2]

(1) N.T. pp. 787, 788, 789; PX 151, p. 13.

(2) PX 38A (The swatches); PX 39 (diagram); N.T. 789–793; Ditzler, Morgan's knitter, admitted the knitting sequence is the same. PX 155, pp. 235–237 and PX 156, pp. 31, 32; PX 151, pp. 19, 20; PX 40 (photograph).

20. The Anderson fabric, PX 38A, was made in several colors.

[PX 151, p. 22; N.T. 796, 797].

21. The completed Anderson fabric made in 1933 became a permanent part of Munsingwear's reference files in 1933 when swatches of the waffle fabric [PX 38A] were placed on a reference card in the reference files.

[PX 151, pp. 9–12; N.T. 806, 807].

22. The reference file at Munsingwear in which the card and swatches PX 38 and PX 38A were located contains both fabric swatches for potential commercial production and swatches of fabrics which are currently or were in production.

[PX 151, pp. 163–168, Anderson Deposition; N.T. 929, 994].

23. The Anderson knitted fabric made in 1933 [PX 38A] was made into garments by the Design Department,[1] and these garments were displayed on racks at Munsingwear [2] where they could have been viewed by merchandising men and others.[3]

(1) N.T. pp. 797, 870; PX 151, pp. 189, 190, 191, 194, 195, 196, 209, 271, 272, 273, 285.

(2) N.T. 797, 869, 870, 872; PX 151, pp. 32, 33, 90, 92.

(3) PX 151, pp. 90, 91, 92.

24. The Anderson knitted fabric made in 1933 [PX 38A] was made by Anderson on a Wildman 10 cut circular knitting machine with a 2 x 2 needle arrangement, and the knitting steps which Anderson followed were identical to those recited in the preferred example in the Morgan patent and in the most specific method Claim 13 of the patent.

[N.T. 789–792; PX 151, pp. 14, 168, 169 (Anderson Deposition); PX 38].

25. While the original setting up for making the fabric [PX 38A] may have been initially experimental, it ceased to be an experiment when Anderson completed the fabric, determined it to be satisfactory, turned it over to the Design Department, and placed fabric swatches

on a card in the reference file. No further work by him was necessary.

[N.T. 804; PX 151, pp. 24, 25, 33, 34, 65, 88, 89, 166, 168, 170, 177, 180; N.T. 995, 996, 998].

26. The Anderson fabric knitted in 1933 [PX 38A] is a rib-knitted fabric having longitudinally extending alternate ribs and valleys on both sides thereof and longitudinally spaced apart laterally extending groups of adjacent tuck strands overlying the valleys and underlying the ribs of the fabric.[1]  All rib knit fabrics have alternate ribs and valleys, and in the Anderson fabric the tuck stitches break up the valleys into "cells" i. e., pockets or waffle-like depressions.[2]

(1) N.T. p. 792, 813; tuck stitches in rib fabrics inherently overlie the valleys—Lawson—N.T. 508.

(2) N.T. 792, 793, 805, 806; PX 151, pp. 148–150.

27. Although the Morgan claims do not recite the type or size of the yarn, the Anderson fabric made in 1933 [PX 38A] was made of a two ply Zephyr wool yarn which is the equivalent of a 13 and $\frac{1}{3}$ cotton count. This is a medium to heavy yarn approximating the yarn given in Morgan's specific example.

[N.T. 822, Anderson; PX 156, p. 32, Ditzler].

28. The Anderson knitted fabric made in 1933 [PX 38A], though of a relatively loose knitting stitch, has air-entrapping cells the side walls of which are formed by the ribs and the top and bottom walls of which are constituted by the tuck strands.

[N.T. 792, 793, 805, 806].

29. The claims of the Morgan patent speak of "air entrapping cells", the side walls of which are formed by the ribs and the top and bottom walls of which are formed by tuck strands, but the Morgan claims do not define the terms "air entrapping" or "cells". Accordingly, the claims are directly readable on the Anderson fabric made in 1933.

[See Plaintiffs' Brief, p. 22; PX 151, pp. 149–151 as to entrapment being a matter of degree].

30. The PX 38A fabrics were not abandoned, suppressed or concealed by Carroll Anderson.

31. Variations, between the Anderson fabric [PX 38A] and the fabric produced by the example in the Morgan patent are a matter of degree, such as tightness of knitting.

[N.T. 1376, 1519].

32. Prior to the time when the alleged invention here involved was made, it was well known in the art to knit rib fabrics with plural successive tucks on either the dial or cylinder needles, or on both. It was a simple matter of machine adjustment to arrange a machine to tuck two times instead of once, or three times instead of twice.

[Lawson, N.T. 145; Anderson, N.T. 816, 817; PX 200, p. 138, example IX shows two successive tucks on each face; Frailey, N.T. 2195; PX 208, p. 3; Brennan, N.T. 1471, 1473; PX 198, Rab article].

33. In the prior art publication PX 200, the fabric on page 138 designated as "Double French Rack", example IX, is a rib knit fabric having multiple tucks on each face in adjacent groups. As shown in the knitting diagram on page 138, the dial needles tuck for two courses while the rib needles knit; then for one course both the dial and cylinder needles knit; then the cylinder needles tuck for two courses while the dial needles knit; then for one course both the dial and cylinder needles knit; and then the sequence is repeated. The example specifies that the yarn be $\frac{2}{14}$s worsted, which would result in a heavy fabric. [N.T. 1097, 1101]. The multiple tuck strands would limit the widthwise stretch of the fabric and would add to the warmth-giving properties of the fabric. [N.T. 1552].

The fabric described on page 138 of PX 200 is a 1 x 1 rib, which is stated in the patent to be within the scope of the invention.

34. In rib knit fabrics having a tuck stitch or plural tuck stitches, the tuck stitches break up the valleys into cells or pockets. The depth or size or prominence of these cells or pockets and the bulk of

the fabrics obviously can be increased in degree by using a larger yarn or yarns or by adding additional tuck strands or tuck stitches.

[Morgan, PX 157, pp. 20, 21, 25, 51; PX 127, pp. 283, 284].

35. Prior to the time the alleged invention here involved was made, it was known to persons skilled in the knitting art that tuck stitches in a rib knit fabric would act as crossbars to give a waffle or pocketed effect.

[Morgan, N.T. 667–671; Morgan, PX 157, pp. 12, 13, 48, 51, 88; Morgan, PX 127, pp. 283–286; Ditzler, PX 155, p. 271].

36. At least as early as 1939, a 2 x 2 rib knit fabrics having at least three successive tucks on one face and one tuck on the other face were made and sold as warm garments or fabrics. Garments made from these fabrics were sold as having lightweight but substantial warmth. One purpose of the tucks in these fabrics was to build up the bulk of the fabrics to create more warmth without a corresponding proportional increase in weight.

[H. Reinhard, N.T. 1259, 1262, 1263, 1264–1280, 1293, 1294, 1297, 1298].

37. Prior to the time when the alleged invention was made, there was nothing new or unobvious in using either single or plural tuck strands in a rib knit fabric to brace or stabilize the fabric and thus limit its widthwise stretch. Regardless of the purpose for which tuck strands are used, they inherently perform this function in a lesser or greater degree depending upon the tightness of knitting. [N.T. 1369, 1370, 1519, 1523, 1533, 1534, 1547, 1548, 1550–1553, 1613, 1614]. Furthermore, tucks for this specific purpose have been known since at least 1907, the date of publication of the German patent PX 192, 192A. This specific purpose or function is stated on pages 1, 2 and 7 of the translation, PX 192A. Therefore, neither the bracing purpose nor the bracing function of the tuck stitches as described in the Morgan patent is novel.

38. To a greater or less degree depending on the size of the yarn and the tightness of the knit, any rib knit fabric having pockets formed by tuck stitches will entrap air to impart insulating properties to the fabric regardless of whether the tuck stitches or pockets were provided for that specific purpose or for some other purpose.

[N.T. 1613, 1614].

39. Morgan admitted that he had known of prior art rib knit fabrics having plural tucks on the front and either no tucks or one tuck on the back.

[Morgan, PX 127, p. 287].

40. It has long been known in the art that in knitting with rib machines the same operations can be performed on both faces of the fabric so as to give the same effect on both faces of the fabric, and specifically that groups of adjacent tuck strands could be formed on each face of a rib knit fabric.

[N.T. 1305; PX 200, p. 138, example IX; N.T. 1178–1181; PX 208, p. 3, lower right-hand figure].

41. The faces of fabrics PX 221, PX 229, and PX 299 which incorporate plural tuck stitches are indistinguishable from the face of the fabric shown in Fig. 4 of the Morgan patent and the napped fabric of Fig. 6 of the patent, and the cells of these three fabrics are at least as prominent and well defined as the fabrics of the two figures of the patent, including the degree of porosity of the cell floors.

[From a comparison of the fabrics and the figures of the patent].

42. Prior to the time that the alleged invention here involved was made, a skilled knitter having before him a 2 x 2 rib knit fabric with at least two tuck stitches on the front and no tuck stitches on the back would have known how to make the back face of the fabric the same as the front face.

[Shinn, N.T. 1178–1181; Anderson, N.T. 941].

43. Prior to the time that the alleged invention here involved was made, a

skilled knitter having a piece of Raschel fabric before him with pockets on both sides, and having before him also a 2 x 2 rib knit fabric with pockets or cells formed on one side by plural tuck stitches and with one tuck stitch on the other side, would have known that the rib knit fabric could be balanced by adding one or more tuck stitches to form pockets on the other side.

[Shinn, N.T. 1178–1181; Anderson, N.T. 941].

44. There are in evidence two fabrics made by Michael LaCorte, a knitter for Beaunit Mills, Inc., prior to 1953. The fabrics, their knitting diagram, and a stipulation of counsel were combined as PX 299. The fabrics were made while Mr. LaCorte was "fooling around" with a knitting machine. He thought they were attractive, and might be useful as either outerwear or underwear. For this reason he saved the swatches. The fabrics were never manufactured or sold. The fabrics have three tucks on one side and one tuck on the other side and are a 2 x 2 rib setup. These fabrics have a waffle effect, or pockets, or cells, etc., at least on the side which incorporates the multiple tuck stitches. These are "air-entrapping cells" constructed in the exact manner disclosed in the Morgan patent. The only difference between these fabrics and the Morgan patent is that these fabrics incorporate one tuck stitch or strand on one side whereas the Morgan patent discloses two or more tuck stitches or strands.

45. The fabric of DX 1 is a 2 x 2 rib knit fabric having three consecutive tucks on the dial side and no tucks on the cylinder side. [DX 226, p. 69]. This fabric was made by Lloyd Kranz, knitter for Jones Knitting Corporation, in his spare time and was completed around December, 1956. Mr. Kranz did not see any fabric manufactured by Morgan until at least August, 1957.

[DX 226, pp. 71, 72, 73, 122].

46. The fabric of DX 99 was produced by Carroll R. Anderson without any knowledge of the Morgan patent or any

fabric produced by Morgan. This fabric is knitted the same as the knitting sequence shown in Figure 2 of the Morgan patent and the 1933 PX 38A fabrics. [N. T. 846]. The men's underwear division of the Munsingwear Company requested Mr. Anderson to make or have made a circular knit thermal fabric. [N.T. 944]. Several different fabrics were made according to Mr. Anderson's instructions. [N.T. 944; PX 151, p. 132]. Then the merchandising people brought in a Jones Knitting Company garment which had tucks on only one side, and Mr. Anderson thought it could be improved by making it perfectly balanced by adding tucks to the other side. [N.T. 941, 974]. DX 101, dated August 29, 1958, is the record of the original piece which was made. [N.T. 941]. Although a Mr. Woodhead actually made the fabric, it was made at Mr. Anderson's specific request, and he was fully familiar with the development. [N.T. 954, 955, 974]. Mr. Anderson did not see the Morgan patent until November 25, 1958, when it was sent to him by Mr. Woodhead. [N.T. 922; DX 97]. Nor had he seen any fabric of the type marketed by Morgan. [N.T. 949, 976, 977, 1008, 1009]. The fabric DX 99 which had been made pursuant to Mr. Anderson's instructions was adopted by Munsingwear, and sales commenced on August 3, 1959. [PX 151, p. 135; N.T. 974]. Mr. Anderson had seen the Morgan patent at the time the DX 99 fabric was adopted for sale, but he had not seen it or any corresponding fabric at the time the DX 99 fabric was initially made.

47. Back in 1935 or 1936, Emmitt Murray made a rib knit fabric having a plurality of tuck stitches on each side. Specifically the fabric had ribs on one side which were three needles wide and ribs on the other side which were two needles wide. There were at least two successive tuck stitches bridging the valleys on each side of the fabric. [N.T. 1197–1199]. The knitting diagram for the fabric is set forth in the document PX 223, and specifically on the page marked as PX 223a. A revised knitting diagram in the form shown in the Mor-

**234**

gan patent is in evidence as PX 280. The fabrics themselves could not be located. [N.T. 1230].

48. Defendants' argument on page 33 of their Reply Brief that plaintiffs conceded during the trial that the prior art patents and publications failed to disclose the Morgan invention is misdirected. Plaintiffs conceded that certain simultaneous "purposes" of tuck stitches were not specifically mentioned in the patents and publications, but there was no concession as to the functions or effects of such tuck stitches. The stated purpose of tuck stitches is not equivalent to their function or effect.

[N.T. 1556].

49. It has long been obvious to persons skilled in the knitting art to knit rib fabrics having plural tuck stitches in varying degrees of stitch tightness and in varying sizes of yarn.

[N.T. 795, 796, 1063, 1064, 1517, 1734].

50. PX 34A is a photostatic enlargement of the 1919 catalogue PX 34. The fabric shown on the cover of the catalogue is a broad rib fabric with the valleys on one side broken up into pockets by tuck stitches in groups of two. [N.T. 1043, 1044]. PX 290 is in evidence as a fabric having the identical stitch structure of PX 34.

[N.T. 1616].

51. More than one year prior to the filing of the Morgan application it was known to those of ordinary skill in the art to process knitted fabrics by subjecting them to scouring, drying, and napping.

[Pretrial Order, Admitted Fact No. 20; Def. Reply Brief, p. 3].

52. More than one year prior to the filing of the Morgan application it was known to those of ordinary skill in the art that the scouring of knitted fabrics prior to drying and napping could be carried out by passing the knitted fabric through an aqueous bath containing a detergent to remove dirt, grease and similar foreign materials.

[Pretrial Order, Admitted Fact No. 21; Def. Reply Brief, p. 3].

53. More than one year prior to the filing of the Morgan application, and before the time that the alleged invention here involved was made, it was known in the art to dry fabrics in a tumble drier to control shrinkage.

[PX 202; Shinn, N.T. 1029; Def. Reply Brief, p. 3].

## II. *Conclusions of Law*

1. Claims 1–18 of the Morgan patent are invalid in that:

(a) The fabrics and the methods of knitting and processing defined therein were known or used by others in this country, or described in a printed publication in this or a foreign country, before the alleged invention thereof by Morgan;

(b) before Morgan's alleged invention of the fabrics and the methods of knitting and processing defined therein, the fabrics and the methods were made in this country by another who had not abandoned, suppressed or concealed them.

2. Claims 1–18 of the Morgan patent are invalid in that the differences between the fabrics and methods defined therein and the prior art relate to known knitting practices and matters of degree such that the subject matter defined in these claims would have been obvious at the time the invention was made to a person having ordinary skill in the art of designing and knitting fabrics.

3. Claims 1–13 of the Morgan patent are invalid in that the claims do not particularly point out and clearly distinguish what is claimed from what went before in the art, in that they do not clearly delineate between what is covered and what is not covered, and in that they rely on comparative or relative terms without setting forth a clear standard with which to compare or relate.